(77 South. 380)·

CARSON et al. v. SLEIGH et al. (7 Div. 880.)

(Supreme Court of Alabama. Dec. 20, 1917.)

1. EQUITY  427(1)—DECREE—MATTERS NOT IN ISSUE.

Where defendants in general creditor's bill filed cross-complaint, whereupon plaintiffs amended by withdrawing all allegations of bill on which cross-complaint was based, thus effectually eliminating cross-complainants as parties in that capacity, decree on merits of cross-complaint was error.

2. EQUITY  385—DECREE—MATTERS NOT IN ISSUE.

Where cross-bill was filed January 30th, submission taken February 17th, without decree pro confesso, but with leave to file notes of testimony later, and on February 20th, answer confessing averments of cross-bill was filed, and on February 24th notes of testimony were filed, but marked February 17th, the procedure was irregular, since chancery rule 75 (Code 1907, p. 1551) requires notes of testimony to be available at the hearing, which precedes submission.

Appeal from Circuit Court, Calhoun County; Hugh D. Merrill, Judge.

Bill in equity by J. W. Sleigh and another against T. L. Carson and others, wherein defendants filed a cross-bill. From the decree rendered, defendants appeal. Reversed and remanded.

T. C. Sensabaugh, of Anniston, for appellants. Ross Blackmon and W. W. Whiteside, both of Anniston, for appellees.

McCLELLAN, J. The original bill was a general creditors' bill filed by J. W. Sleigh and John Napper, who averred that they were judgment creditors of the Carson Heading Mill, a partnership, and of T. L. and John Carson. Sleigh's demand was alleged to be $232.68, and Napper's, $123.25. There was a general allegation that these debtors owed other creditors. The purpose of the bill was to avoid fraudulent dispositions or transfers of property by these debtors, to the end of·

subjecting such assets to the demands of these and other creditors. The defendants named in the original bill were T. L. and John Carson, William Hanna, F. C. Mitchell, and the Calhoun Cooperage Company, a corporation. The original bill charged the two Carsons and Hanna with the entertainment and actual promotion of a positive fraudulent purpose to hinder, delay, or defraud the creditors of the Carson Heading Company (partnership), and that Mitchell consciously contributed to the effectuation of the fraudulent scheme by taking over the properties of the heading company and later transferring them to the Calhoun Cooperage Company, of which corporation the articles of incorporation disclosed he (Mitchell) held 148 of the 150 shares purchased these properties, and that Hanna and T. L. Carson bought and paid for in cash but one share each of the two remaining shares. On September 22, 1916, the original bill was amended. By this amendment the next of kin and heirs at law of Mrs. M. E. Carson, deceased, were brought in as parties defendant. It was alleged that there was no administration of her estate. This amendment added an eleventh paragraph to the original bill, which read:

"Eleventh. Complainants aver that subsequent to the organization of the Calhoun Cooperage Company, F. C. Mitchell, in pursuance of an agreement entered into by and between himself, William Hanna, and T. L. Carson, about the time of the organization of the Calhoun Cooperage Company, on, to wit, the 19th day of September, 1914, whereby the said F. Mitchell subscribed for one hundred and forty-eight (148) shares of the said capital stock of the Calhoun Cooperage Company of par value of one hundred dollars ($100.00) per share, subsequently transferred to the said T. L. Carson seventy-four (74) shares of the said capital stock of the said Calhoun Cooperage Company as hereinabove described. Complainants further aver that upon the transfer of the seventy-four (74) shares of stock of the capital stock of the Calhoun Cooperage Company by said F. C. Mitchell to the said T. L. Carson, the said T. L. Carson claiming to be indebted to Mrs. M. E. Carson transferred and conveyed to her the seventy-four (74) shares of the capital stock of the said Calhoun Cooperage Company to secure said indebtedness of the said T. L. Carson to her, which said indebtedness these complainants allege was at the date of the said transaction past due, if it existed at all. These complainants aver, however, that they are informed and believe, and upon such information and belief state and charge, that the said indebtedness of the said T. L. Carson to the said M. E. Carson was fraudulent and simulated and did not exist. Your orators aver, however, that if they are mistaken as to the bona fides of the said indebtedness of the said T. L. Carson to M. E. Carson aver that by the transfer or assignment to her of the seventy-four (74) shares of the capital stock of the Calhoun Cooperage Company, the said T. L. Carson thereby transferred and assigned substantially all of his property to her subject to execution for his prior indebtedness, and that the said M. E. Carson was given a preference or priority of payments over these complainants and his remaining creditors, hence they aver that the said transfer inures to their benefit equally with the said M. E. Carson."

The prayer, consequent upon the matters introduced by the amendment, was that the transfer by T. L. Carson of 74 shares of the capital stock be declared a general assignment inuring to the benefit of all creditors of T. L. Carson; that the amount of the indebtedness from T. L. Carson or the heading mill to Mrs. M. E. Carson be ascertained by reference to the register; that, in the event of a conclusion in accordance with this feature of the prayer, the cooperage company stock should be sold and the proceeds thereof should, in proper proportion, be devoted to the discharge of the demands of creditors. By another amendment the allegation repeated in the original bill that the heading mill was a partnership was stricken out.

To the bill as it stood after the amendment filed September 22, 1916, stated and quoted above, the heirs of Mrs. M. E. Carson, deceased, filed their answer on October 30, 1916, and later, on January 30, 1917, filed their cross-bill. The respondents to this cross-bill were the complainants in the original bill, Sleigh and Napper, and the cross-complainants' coedefendants in the original bill, viz. William Hanna, John C. Carson, F. C. Mitchell, and the Calhoun Cooperage Company. The substance of the cross-bill, after repeating the allegations of the original bill as amended in the respect that it sought the avoidance of the transfer of the 74 shares of stock, is thus set forth:

"Your complainants further show unto your honor and aver that at the time of the organization of said Calhoun Cooperage Company, and at the time of the transfer of said 74 shares of its capital stock to Mrs. M. E. Carson, all of the property composing or constituting its capital stock was burdened with the following debts, incumbrances, mortgages, and liens thereon, occurring and attaching thereto in the following manner: From about the year 1911 to the 4th day of February, 1913, said T. L. Carson owned all the said property constituting the capital stock of the Calhoun Cooperage Company at the time of its organization on the 19th day of September, 1914, and operated it as an industrial plant, individually under the name of the Carson Heading Mill, and said Mrs. M. E. Carson furnished him large sums of money with which to purchase and establish said plant, or Carson Heading Mill, and from time to time money to operate same, by executing her notes with him as his surety, and on the 12th day of December, 1911, she became his surety by a note and mortgage to L. M. Burns in the sum of $1,500, which sum of money was received by T. L. Carson and used by him in the operation of the Carson Heading Mill, and the said note and mortgage was paid and discharged by said Mrs. M. E. Carson as such surety; said note and mortgage is on file as evidence in this cause, and is asked to be considered as part of this cross-bill. That on the 4th day of February, 1913, T. L. Carson sold and conveyed to said Wm. Hanna all of said property known as the Carson Heading Mill by deed which is in file in this cause, and asked to be taken and considered as a part of this cross-bill, and thereafter said Carson Heading Mill was owned by said Wm. Hanna and operated by him through and by his agent, T. L. Carson, under a power of attorney on file as evidence in this cause, and asked to be considered part of this

bill, and that on the 10th day of April, 1913, Mrs. M. E. Carson became the surety of the said Wm. Hanna and said Carson Heading Mill, jointly with said T. L. and Jno. C. Carson, by note and mortgage payable to the City Bank & Trust Company as trustee for the Anniston City National Bank, in the sum of $2,500, and all of the property of the said William Hanna known as the Carson Heading Mill, together with the lands of Mrs. M. E. Carson, was conveyed by said mortgage to secure said indebtedness, which* indebtedness was paid, or the greater partˑof the same, by Mrs. M. E. Carson, or with moneys belonging to her, in discharge of said mortgage; the said note and mortgage are on file as evidence in this cause, and are asked to be considered as parts of this cross-bill, and that Mrs. M. E. Carson signed as surety for said Hanna or Carson Heading Mill other notes to be shown in evidence, and as such surety paid same before the 19th day of September, 1914, when said Calhoun Cooperage Company was organized.

"(4) Your complaints further aver and show unto your honor that no part of said sums of money paid by Mrs. M. E. Carson as surety for said T. L. Carson, William Hanna, and Carson Heading Mill as aforesaid has been paid to her, or to your complainants, otherwise than by the delivery to her of said 74 shares of capital stock of the Calhoun Cooperage Company which is and was at the time it was transferred to her almost worthless, and the same is and was at said time worth at most not more than 20 per cent. of its face value; that T. L. Carson and John C. Carson are insolvent, and said William Hanna and F. C. Mitchell if they [have] any other property anywhere, they have no property in the state of Alabama, except such as their interest may be in the property of said Calhoun Cooperage Company, so that if said shares of stock should be sold as prayed in said original bill, your complainants would be without remedy as the heirs at law of Mrs. M. E. Carson to be reimbursed of any part of the said sum of money paid by her as surety aforesaid."

Omitting parts of the prayer not now necessary to be stated, the particular relief sought was this:

"And upon the final hearing of the cause your complainants pray that unless the said original and amended bills be dismissed by your honor as to these complainants for want of equity, multifariousness, and other sufficient considerations shown by complainants' demurrers to said bills and here insisted upon; or unless upon their answer and proof your honor will decree the sale and transfer of said 74 shares of stock to Mrs. M. E. Carson to be valid, and confirm the same to complainants, for which relief they here pray, then and in either event, your complainants pray that your honor ascertain the amount of the mortgage debts paid and discharged by Mrs. M. E. Carson as surety therein, which were a burden or lien upon said property known as the Carson Heading Mill property, and now constituting the capital stock of the Calhoun Cooperage Company, and that your complainants be, by decree of your honor, subrogated to all of the rights of Mrs. M. E. Carson by reason of the said Mrs. M. E. Carson having paid and discharged the same as surety aforesaid, and to all the rights of mortgagees in and to said mortgages, and that said mortgages be held and declared to be a lien in favor of complainants as the heirs at law of Mrs. M. E. Carson upon all the property formerly known as the Carson Heading Mill property and now belonging to, or comprising the assets of, the Calhoun Cooperage Company, to the extent and for amount sufficient to reimburse complainants as said heirs at law of the sums of money paid by Mrs. M. E. Carson in satisfaction and discharge of said mortgages, together with interest thereon, and to that end, and for the purpose of so reimbursing complainants as said heirs, that said property be sold by decree of your honor and under the directions of this court."

On February 5, 1917, the original complainants filed in the cause a paper containing this:

"Complainants also amend the amendment to the original bill filed in this cause on 22d day of September, 1916, by striking therefrom all of said amendment except paragraphs numbered seventh and ninth, which paragraphs are amendatory of the seventh and ninth paragraphs of the original bill."

[1] According to the express provision of section 3 of the act approved September 22, 1915 (Gen. Acts 1915, pp. 705, 706), no order allowing this amendment' was necessary. Hence, upon filing, the amendment was effective to eliminate from the original complainants' pleading all those features of the amendment filed September 22, 1916, whereby the bona fides and validity of Mrs. M. E. Carson's receipt of the 74 shares of stock from T. L. Carson was brought under investigation, and, as appellees contend, operated to remove the cross-complainants as parties to the cause and to eliminate, also, the subject-matter upon which their cross-bill rested. Notwithstanding this effect of the amendment filed February 5, 1917, the court's final decree adjudged this, among other things, asˑupon the merits of the cross-bill:

"This cause was submitted at said term of this court for final decree on pleadings and proof as noted by the register. Upon consideration thereof the court is of the opinion that complainants are entitled to relief under their original bill as amended, and that cross-complainants are not entitled to relief under their cross-suit. It is therefore ordered, adjudged, and decreed by the court that cross-complainants' cross-suit be, and the same is hereby, dismissed, and that cross-complainants pay the costs of said cross-suit to be taxed by the register for which let execution issue."

It is clear that this was a decree upon the merits of the cause set forth in the cross-bill, which had been previously eliminated by the original complainants⁴ amendment of date February 5, 1917, against parties who had been removed as parties to the original cause by the amendment of that date, upon whom costs were imposed by the decree and execution ordered issued to enforce collection. After this amendment there was no pleading or parties left in the cause upon which the judicial power could be visited to determine rights asserted by or in the cross-bill. The decree was unauthorized and was affected with serious error in the respect it sought to conclude the issues and rights asserted in the theretofore eliminated cross-bill.

[2] On the other hand, if it should be assumed, for the occasion only, that the cross-complainants' cross-bill set forth an independent equity that the dismissal of the amended original bill, in whole or in part, could not.

effect to eliminate from the cause, the cause asserted in the cross-bill was not at issue when the submission was taken on February 17, 1917—the cross-bill having been filed on January 30, 1917, as pointed out in the first ground of the cross-complainants' objections to the submission on February 17, 1917. No decree pro confesso was taken before or upon the date of submission. Had a decree pro confesso been taken on or before the date of submission (February 17, 1917), it would have been premature and erroneous. On February 20, 1917, an answer confessing the averments of the cross-bill was filed by Mitchell, T. L. Carson, John C. Carson, and William Hanna. The notes of testimony were dated and filed February 17, 1917. It appears from the affidavit of appellants' solicitor that the cause was submitted, over appellants' objection, on February 17, 1917, with leave extended by the court to the parties to subsequently file notes of testimony, and that the notes of testimony, though dated February 17, 1917, and marked filed on that day, were made and filed several days subsequently, on, to wit, February 24, 1917. From the face of the note of testimony on the part of the original defendants and of the cross-complainants, signed by the register, note was thereon expressly taken and made of the answer of Hanna and others to the cross-bill, which answer was filed on February 20, 1917—three days after the note of testimony purports to have been signed and filed by the register. If, as the affidavit shows, the submission was had on February 17, 1917, and there is nothing to the contrary in the minutes of the court reproduced here, it is evident that no note of testimony on behalf of the original defendants or of the cross-complainants was made by the register before or when the submission of the cause was had. Under chancery rule 75 (Civil Code, p. 1551), notes of testimony must be available on and at the hearing, which necessarily precedes a submission of a cause in equity, and the court is expressly inhibited from considering testimony not noted as rule 75 prescribes. Tatum v. Yahn, 130 Ala. 575, 29 South. 201. If the submission was had on February 17, 1917, there was no note of testimony on file. Rule 75, Ch. Prac., Civil Code, p. 1551. This court has always regarded this feature of orderly chancery practice as being of vital importance to the administraton of justice in such tribunals. Darling v. Hanlon, 197 Ala. 455, 73 South. 20; Kelley v. Chandler, 200 Ala. 215, 75 South. 973.

The decree is reversed and the cause is remanded back to its status before submission in February, 1917.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD, SOMERVILLE, and THOMAS, JJ., concur. SAYRE and GARDNER, JJ., concur in the conclusion only.